# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>801 Market St., Suite 1000<br>Philadelphia, PA 19107<br><br>**Plaintiff,**<br><br>v.<br><br>**CEDAR FAIR, L.P., d/b/a CEDAR POINT**<br>One Cedar Point Drive,<br>Sandusky, Ohio 44870<br><br>**MAGNUM MANAGEMENT CORPORATION**<br>One Cedar Point Drive,<br>Sandusky, Ohio 44870<br><br>**Defendants.** | Civil Action No. 3:23-cv-1843<br><br>**COMPLAINT & JURY DEMAND** |

## NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act of 1967, as amended, ("ADEA") to correct unlawful employment practices and to provide appropriate relief to a class of individuals who were adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Defendant Cedar Fair, L.P., d/b/a Cedar Point ("Cedar Fair") and Defendant Magnum Management Corporation ("Magnum") (collectively "Defendants"), instituted a policy to deny housing and related transportation benefits to seasonal Cedar Point employees in the protected age group. In so doing, they have deprived a class of individuals aged 40 and older of equal terms, conditions, or privileges of employment, and of employment opportunities, based on age, in violation of the ADEA.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this civil action under 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217. This action is further authorized and instituted pursuant to Section 7(a) of the ADEA, as amended, 29 U.S.C. § 626 (a).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the U.S. District Court for the Northern District of Ohio, Western Division.

**PARTIES**

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA, and is expressly authorized to bring this action under Section 7(b) of ADEA, 29 U.S.C. § 626(b).

4. At all relevant times, Defendant Cedar Fair, a Delaware limited partnership headquartered in Ohio, has continuously been doing business in Erie County, Ohio, and has continuously employed at least twenty (20) employees.

5. At all relevant times, Defendant Cedar Fair has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 11(b), (g), and (h) of the ADEA, 29 U.S.C. § 630(b), (g), and (h).

6. At all relevant times, Defendant Cedar Fair has owned and operated Cedar Point, located in Sandusky, Ohio.

7. At all relevant times, Defendant Magnum has provided staffing services for Cedar Point.

2

8. At all relevant times, Defendant Magnum, an Ohio corporation with its headquarters and principal place of business in Ohio, has continuously been doing business in Erie County, Ohio, and has continuously employed at least twenty (20) employees.

9. At all relevant times, Defendant Magnum has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 11(b), (g), and (h) of the ADEA, 29 U.S.C. § 630(b), (g), and (h).

10. At all relevant times, Defendant Magnum was a wholly-owned subsidiary and/or affiliate of Defendant Cedar Fair.

11. At all relevant times, Defendant Cedar Fair and Defendant Magnum comprised an integrated enterprise and/or single employer of the Cedar Point workforce. Upon information and belief, this includes, but is not limited to, the following:

   a) engaging in the same business enterprise;

   b) having a unity of interest;

   c) sharing common board members, officers, executives, and/or management;

   d) sharing functions related to human resources, communications, IT, sales, marketing, and product development;

   e) sharing a common human resources management system;

   f) maintaining and implementing common human resources policies and protocols, including the housing policy at issue;

   g) maintaining the same business address, mailing address, and phone number; and

   h) having Cedar Fair exert control over the daily affairs of Magnum, including with respect to labor activities and personnel decisions.

12. In addition and/or in the alternative, at all relevant times, Defendant Cedar Fair and

Defendant Magnum jointly exercised or significantly shared control over Cedar Point's workforce, including with respect to these employees' terms, conditions, or privileges of employment, and their employment opportunities, thereby comprising and/or functioning as a joint employer of the Cedar Point workforce.

## PROCEDURAL BACKGROUND AND RELATED CASE

13. On January 26, 2022, Jay Billnitzer filed a charge of discrimination with the EEOC, alleging that Cedar Point violated the ADEA by instituting an age-based prohibition on employee housing.

14. On October 10, 2022, the EEOC issued Mr. Billnitzer a Right to Sue Notice at his request, after which it continued its investigation with respect to other individuals in the protected age group.

15. On January 12, 2023, Mr. Billnitzer filed *Billnitzer v. Cedar Fair, L.P., et al.*, No. 3:23-cv-00065, in U.S. District Court for the Northern District of Ohio, a collective action alleging ADEA violations based on the housing prohibition. *See* ECF No. 1 (No. 3:23-cv-00065). The case was assigned to the Honorable Jeffrey J. Helmick.

16. On September 7, 2023, *Billnitzer v. Cedar Fair, L.P., et al.* was dismissed without prejudice after the parties indicated to the Court that they had reached a settlement. *See* ECF No. 9 (No. 3:23-cv-00065).

17. Upon information and belief, no one other than Mr. Billnitzer was compensated through the settlement.

## EEOC CONDITIONS PRECEDENT

18. On November 18, 2022, EEOC issued to Defendants a Letter of Determination (the "Determination") on Mr. Billnitzer's charge finding reasonable cause to believe that they had violated

4

the ADEA as to a class of individuals in the protected age group and inviting them to join with EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory employment practices and provide appropriate relief.

19. EEOC engaged in communications with Defendants to provide them with the opportunity to remedy the discriminatory practices described in the Determination.

20. EEOC was unable to secure from Defendants a conciliation agreement that was acceptable to the Commission.

21. On July 28, 2023, EEOC issued to Defendants a Notice of Failure of Conciliation.

22. All conditions precedent to the institution of this lawsuit have been fulfilled.

### GENERAL FACTUAL ALLEGATIONS

23. Cedar Point operates from approximately May through October (the "season").

24. Defendants have staffed Cedar Point, in part, with seasonal employees, many of whom reside out-of-state, out-of-country, or in excess of 30 miles from Sandusky, Ohio ("out-of-town seasonal employees").

25. Defendants have, for many years, offered housing on-site or near Cedar Point ("Cedar Point housing") to out-of-town seasonal employees.

26. Until the 2021 season, the only age restriction for Cedar Point housing was that residents had to be at least 18 years old.

27. Until the 2021 season, out-of-town seasonal employees aged 40 and older lived in Cedar Point housing.

28. Cedar Point housing provides an affordable and sufficiently below-market rate compared to commercially available short-term rentals in the immediate area.

    a. During the peak season in 2020 (May through Labor Day), Cedar Point housing

      rented for approximately $10.00 per day ($280 per month). According to the United States Department of Housing and Urban Development ("HUD"), the average, or 50th percentile, rent for a one-bedroom apartment in Erie County, Ohio, was $628.00 per month in 2020.[1]

b. During the peak season in 2021, Cedar Point housing rented for $10.00 per day ($280 per month), $12.00 per day ($336 per month), and $13.00 per day ($364 per month), depending on the accommodations. According to HUD, the average, or 50th percentile, rent for a one-bedroom apartment in Erie County, Ohio, was $681.00 per month in 2021.[2]

c. During the peak season in 2022, Cedar Point housing rented for approximately $12.00 per day ($336 per month), $14.00 per day ($392 per month), and $16.00 per day ($448 per month), depending on the accommodations. According to HUD, the average, or 50th percentile, rent for a one-bedroom apartment in Erie County, Ohio was $690.00 per month in 2022.[3]

d. During "Halloweekends," Cedar Point's Halloween-themed season that begins after Labor Day, Cedar Point housing is free.

29. Defendants also offer free transportation between Cedar Point housing and the amusement park and, in partnership with the City of Sandusky, free transportation from Cedar Point housing in and around Sandusky. This benefit enables residents of Cedar Point housing to work at Cedar Point without their own transportation.

30. Beginning with the 2021 season, Defendants implemented a policy expressly

---

[1] *See* https://www.huduser.gov/portal/datasets/50per.html#year2020 (last visited Sept. 21, 2023).
[2] *See* https://www.huduser.gov/portal/datasets/50per.html#year2021 (last visited Sept. 21, 2023).
[3] *See* https://www.huduser.gov/portal/datasets/50per.html#year2022 (last visited Sept. 21, 2023).

prohibiting out-of-town seasonal employees aged 30 or over who were not employed in a live entertainment role from living in Cedar Point housing ("the policy").

31. Defendants announced this new policy in 2021 job postings on its website, thereby making it clear to older out-of-town applicants that, if hired, they would be ineligible for employee housing.

32. In a statement to the Sandusky Register in February 2021, Defendants confirmed that the policy would be enforced once the 2021 season began.

33. Defendants enforced the policy throughout the 2021 season.

34. Defendants continued to enforce the policy throughout the 2022 season.

35. As a matter of course, Defendants contact seasonal employees who worked at Cedar Point during the previous season to inquire if they want to return during the upcoming season. Those who do undergo a "fast track" onboarding process through an online employment portal. Returning employees indicate their interest in Cedar Point housing in their "fast track" paperwork and, after they are officially rehired, fill out a separate housing application in the online portal. Beginning with the 2021 season, any returning out-of-town seasonal employees aged 40 and older who applied for Cedar Point housing in the online portal were automatically informed that they were ineligible for Cedar Point housing. Such individuals were therefore actively dissuaded from returning to seasonal employment at Cedar Point.

36. The "fast track" onboarding process is not available for returning seasonal employees who did not work the previous season. These employees are reinterviewed. Beginning in 2021, returning employees were informed during their interviews that Cedar Point housing is only available for individuals between the ages of 18 and 29 who live more than 30 miles from Cedar Point. Therefore, returning out-of-town seasonal employees aged 40 and older were actively

7

dissuaded from returning to seasonal employment at Cedar Point.

37. Defendants' policy prevented out-of-town seasonal employees aged 40 and older from resuming their employment with Defendants, in that having to rely on the local rental market, as well as their own transportation, created economic barriers to continued employment. For example:

   a. Elizabeth Rizzo, from California, worked as a bartender at Cedar Point during the fall 2020 season and was provided free housing. She was unable to resume her seasonal employment with Defendants because, as an individual in her late 50s, she was barred from Cedar Point housing.

   b. Edward "Ted" Starnes, from Michigan, worked as a bartender and as a Halloween-season "screamster" at Cedar Point each season from 2016 through 2020. Starnes stayed in Cedar Point Housing and used the related transportation benefits, as he does not drive. He was unable to resume his seasonal employment with Defendants because, as an individual in his forties, he was barred from Cedar Point housing.

   c. Jay Billnitzer,[4] from California, worked as a bartender in 2019 and 2020 during the fall season and utilized the housing benefits. Mr. Billnitzer completed the fast-track application process and was officially rehired in or around January 2021. However, he was unable to resume his seasonable employment because, as an individual in his sixties, he was barred from Cedar Point housing.

38. At all relevant times, Defendants were aware that the policy, with its attendant financial hardship, would prevent out-of-town seasonal employees aged 40 and older from working

---

[4] Mr. Billnitzer initiated an action against Defendants in this Court on January 12, 2023. *See Billnitzer v. Cedar Fair, L.P., et al.*, No. 3:23-cv-00065. That case was dismissed without prejudice on September 7, 2023 after the parties indicated to the Court that they had settled. *See* ECF No. 9 (No. 3:23-cv-00065). Accordingly, EEOC does not seek relief for Mr. Billntizer through this action.

at Cedar Point.

39. Defendants cannot justify their policy with safety concerns about older employees fraternizing with younger ones, as any non-resident employee 18 years or older may visit the Cedar Point housing complexes, including residential and recreational areas, unescorted until 2 a.m. The Associate Recreation Center is open until 3:00 a.m. to both resident and non-resident employees.

**CAUSE OF ACTION: VIOLATION OF SECTION 623(a) OF THE ADEA**

40. The Commission incorporates by reference the factual allegations set forth in Paragraphs 23–39 above.

41. Since at least January 2021, Defendants have deprived Edward "Ted" Starnes, Elizabeth Rizzo, and other individuals aged 40 and older who resided more than 30 miles from Cedar Point, were eligible to resume seasonal employment, and were otherwise eligible to live in Cedar Point housing, of equal terms, conditions, or privileges of employment by denying them Cedar Point housing and associated transportation benefits because of their age, and thereby imposing age-based barriers to continued seasonal employment, in violation of Section 623(a)(1) of the ADEA.

42. Since at least January 2021, Defendants, through their policy, have limited, segregated, and classified their employees in a way that would deprive or tend to deprive Edward "Ted" Starnes, Elizabeth Rizzo, and other individuals aged 40 and older who were eligible to resume seasonal employment with Defendants, and were otherwise eligible to live in Cedar Point housing, of continuing and ongoing seasonal employment opportunities at Cedar Point because of their age, in violation of Section 623(a)(2) of the ADEA.

43. The effect of the unlawful employment practices described in Paragraphs 23–39 above, has been to deprive Edward "Ted" Starnes, Elizabeth Rizzo, and other individuals aged 40 or older who reside more than 30 miles from Cedar Point, were eligible to resume seasonal

employment with Defendants, and were otherwise eligible to live in Cedar Point housing, of equal employment opportunities and otherwise adversely affect their status as returning seasonal employees and/or applicants for returning seasonal employment because of their age.

44. The unlawful employment practices complained of in Paragraphs 23–39 above, were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## **PRAYER FOR RELIEF**

Wherefore, EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, employees, successors, assignees, and all persons in active concert or participation with Defendants, from engaging in age discrimination, including the imposition of age discriminatory terms, conditions, or privileges of employment, and any other employment practice that constitutes discrimination because of age.

B. Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals covered by the ADEA, and which eradicate the effects of its past and present unlawful employment practices, including but not limited to permanently rescinding the policy that is the subject of this lawsuit.

C. Order Defendants to make whole Edward "Ted" Starnes and Elizabeth Rizzo by providing appropriate back wages in an amount to be determined at trial, with prejudgment interest and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

D. Order Defendants to make whole a class of individuals aged 40 or older who were denied equal terms, conditions, or privileges of employment and/or were deprived of continuing and ongoing seasonal employment opportunities because of their age, as described in Paragraphs

40–44 above, by providing appropriate back wages in an amount to be determined at trial, with prejudgment interest and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

E. Order Defendants to pay liquidated damages to Edward "Ted" Starnes and Elizabeth Rizzo for their willful violations described in Paragraphs 23–39, above.

F. Order Defendants to pay liquidated damages to a class of individuals aged 40 or older who were denied equal terms, conditions, or privileges of employment and/or were deprived of continuing and ongoing seasonal employment opportunities because of their age, as described in Paragraphs 40–44, above for Defendants' willful violations described in Paragraphs 23–39, above.

G. Grant such other relief as the Court believes is necessary and proper in the public interest.

## JURY TRIAL DEMAND

45. EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

DEBRA M. LAWRENCE
Regional Attorney

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney

/s/ Clare J. Horan
CLARE J. HORAN
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

        801 Market Street, Suite 1000
        Philadelphia, PA 19107-3127
        Phone: (267) 589-9769
        Fax: (215) 440-2606
        clare.horan@eeoc.gov
        MD Bar No. 2001060014
        *admitted via N.D. Ohio Civ. R. 83.5(k)*